## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**TERRILL LAMAR JENKINS,**

     **Petitioner,**

**v.**                       **Case No. 3:21cv298-MCR/MAF**

**STATE OF FLORIDA,**

     **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On February 15, 2021, Petitioner Terrill Lamar Jenkins, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  On September 22, 2021, Respondent filed an answer, with exhibits.  ECF No. 15.  Petitioner filed a reply.  ECF No. 16.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases.  For the reasons stated herein, the pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Procedural Background

By second amended information filed March 7, 2016, in Escambia County Circuit Court Case 2015-CF-1836, the State of Florida charged Petitioner Terrill Lamar Jenkins with five counts, in connection with events that occurred on or about April 26, 2015:  (1) attempted first degree premeditated murder with a firearm, a life felony, in violation of sections 777.04, 782.04, 784.021, and 775.087, Florida Statutes; (2) burglary of a dwelling with assault or battery, a first degree felony, in violation of sections 810.02(1)(b) and (2)(a), Florida Statutes; (3) aggravated assault by threat with a firearm, a third degree felony, in violation of sections 784.21(1)(a) and 775.087(2), Florida Statutes; (4) petit theft, a misdemeanor, in violation of sections 812.014(1)(a) and (b), and 812.014(3)(a), Florida Statutes; and (5) possession of a firearm by a convicted felon, a second degree felony, in violation of sections 790.23(1)(a) and 775.087(2), Florida Statutes.  Ex. D at 294-95; *see* Ex. A at 1-2 (information), 6-8 (amended information).[1]  Jenkins proceeded to a jury trial on May 4, 2016.  Ex. E at 36-371 (trial transcript). Jenkins did not testify.  *Id*. at 262-63.  The jury found him guilty of the lesser included offenses of aggravated assault on Count 1 and simple assault on

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No.15.

Count 3, and guilty as charged on Counts 2 and 4.  On Count 1, the jury specifically found Jenkins actually possessed and discharged a firearm.  On Count 2, the jury specifically found Jenkins did assault and batter the victim.  Ex. A at 64-66.  The State entered a nolle prosequi on Count 5.  Ex. A at 79.

On May 9, 2016, the trial judge adjudicated Jenkins guilty and sentenced him to twenty (20) years in prison on Count 1, with a twenty-year minimum mandatory under the 10-20-Life Law, and thirty (30) years in prison on Count 2, to run concurrently.  Ex. A at 77-78, 86-94.  The judge sentenced him to time served on Counts 3 and 4.  Ex. A at 78-79, 86-94.

Jenkins appealed his judgment and sentence to the First District Court of Appeal (First DCA), assigned case number 1D16-2344, and his counsel filed an Initial Brief raising three points.  Ex. F at i.  The State filed an Answer Brief.  Ex. G.  Jenkins filed a Reply Brief.  Ex. H.  On November 13, 2017, a three-judge panel of First DCA, which included Judge Allan Winsor, affirmed the case without a written opinion.  Ex. I; Jenkins v. State, 236 So. 3d 1010 (Fla. 1st DCA 2017) (table).  The mandate issued December 4, 2017.  Ex. I.

On February 8, 2019, Jenkins, represented by counsel, filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. J at 11-29.  On July 22, 2019, the state post-conviction trial court struck the Rule 3.850 motion as insufficiently pled, with leave to amend.  Id.

at 30-31.   Jenkins' counsel filed an amended Rule 3.850 motion.  *Id*. at 32-

51.  By order rendered May 26, 2020, the state post-conviction trial court

summarily denied relief.  *Id*. at 52-59.  Through counsel, Jenkins appealed

to the First DCA and filed an initial brief in case number 1D20-2021.  Ex. K.

The State filed a notice that it would not file an answer brief.  Ex. L.  On

January 20, 2021, the First DCA affirmed the case per curiam without a

written opinion.  Ex. M; <u>Jenkins v. State</u>, 310 So. 3d 24 (Fla. 1st DCA 2021)

(table).  The mandate issued February 17, 2021. Ex. M.

In the meantime, on February 15, 2021, Jenkins filed his § 2254

petition in this Court.   ECF No. 1.   He raises five grounds, all alleging

ineffective assistance of counsel (IAC):

(1) **IAC – Failure to Request Jury Instruction**: "Counsel failed to request and use Jury Instruction on the Affirmative Defense to burglary of licensed or invited entry, . . . which violated Petitioner's due process [rights]."  *Id*. at 9.

(2) **IAC – Failure to Object to Jury Instruction**: "Counsel failed to object to [the] jury being instructed on the permissive lesser-included offense of aggravated assault, or to ask for [a Rule 3.140(n) [motion]."  *Id*. at 11.

(3) **IAC – Failure to Call Witness to Testify**:  Trial counsel failed "to get Sharon Stallworth to testify or seek remedial actions if she failed to comply with the subpoena."  *Id*. at 13.

(4) **IAC – Cumulative Error**: "Trial counsel's cumulative errors deprived the Petitioner [of] the right to have . . . effective assistance of counsel."  *Id*. at 15.

(5) **IAC – Consequences of Not Testifying**:    "Trial counsel
failed to [advise] her client about the consequence(s) of not
testifying." *Id*. at 18.

(6) **IAC – Failure to File Rule 3.140(n) Motion**:    Petitioner
asserts he has a "constitutional right to be informed of the
nature and cause of the accusation," he requested counsel to
file a motion under Rule 3.140(n) requesting a statement of
particulars, but his counsel rejected his request indicating he
was "asking her to do thing(s) that is not her job." *Id*. at 20.

On September 22, 2021, Respondent filed an answer, with exhibits.  ECF

No. 15.  Petitioner filed a reply.  ECF No. 16.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180-83

(2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" <u>Cullen</u>, 563 U.S. at 181 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011), and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

For ineffective assistance of counsel (IAC) claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  For this Court's

purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"   <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)).   "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."   *Id.*   It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard."   *Id.*

### <u>Ground 1</u>:  IAC – Failure to Request Jury Instruction

In his first ground, Petitioner Jenkins asserts his trial counsel "failed to request and use Jury Instruction on the Affirmative Defense to burglary of licensed or invited entry, . . . which violated Petitioner's due process [rights]." ECF No. 1 at 9.  He asserts the victim, Sharon Stallworth, "admitted it was not her home" and that Jenkins "had been over to the house without her being there."  *Id*.  He also asserts that Analiscia Hinson admitted "he was always welcome."  *Id*.

As Respondent indicates, Jenkins raised a similar claim in the first ground of his Rule 3.850 motion, in which he asserted his trial counsel should have requested a jury instruction on license and invited entry, given the

testimony of the victim and her sister.  Ex. J at 37-38; ECF No. 15 at 25.  In

its order ruling on the motion, the state post-conviction court first set forth a

brief background of the charges in the case:

> Defendant was charged as to count one with the attempted murder of Shalonda Stallworth, as to count two with burglary with assault or battery, as to count three with aggravated assault with a firearm, and as to count four with petit theft.  (Exhibit B.)  A fifth count of possession of a firearm by a convicted felon was severed for separate trial.  The charge as to count three arose from allegations that Defendant attempted to strike his former girlfriend Shalonda Stallworth with a firearm at her home on Medford Avenue.  The burglary was alleged to occur when she fled to the home of her mother, Sharon Stallworth, at Boland Place, and Defendant followed her into the home.  The attempted murder was alleged to have occurred when Shalonda left her mother's house and tried to flee again in her car, and Defendant fired shots into her car.  The theft was alleged to occur when Defendant took Shalonda's cell phone from her.  A jury found Defendant guilty of a lesser offense of aggravated assault with a firearm as to count one, of burglary with battery and assault as charged as to count two, of a lesser offense of assault as to count three, and of petit theft as charged.  (Exhibit C.)  Defendant was sentenced to a mandatory minimum sentence of 20 years as to count one, concurrent with 30 years as to count two.  (Exhibit D.)  He received time served on the other two counts.

Ex. J at 53-54.  The court then summarily denied the first ground, making the

following findings:

> Defendant claims trial counsel was ineffective for failing to request a jury instruction on the affirmative defense to burglary of a licensed or invited entry.  He alleges he had been to the home of Sharon Stallworth numerous times and had a standing invitation to enter the home.

At trial, Shalonda Stallworth testified Defendant came to her home at Medford Avenue, they argued, he took her cell phone and left the house, and she followed him out of the house to get her phone. (Exhibit E, pp. 83, 86-88.) Outside, Defendant tried to hit her with something that looked like a gun. (Exhibit E, pp. 99-100.) She then fled in her vehicle to her mother's house. (Exhibit E, p. 101.) Defendant followed her in a separate vehicle, she ran into the house and tried to close the front door but could not because Defendant ran after her and stopped her from doing so, and he entered the house. (Exhibit E, pp. 102-104, 131-132.) Inside, Shalonda's mom, Defendant's cousin, and Shalonda tussled with Defendant, trying to keep him from putting his hands on Shalonda's neck. (Exhibit E, pp. 104-107.) The cousin had arrived separately about the same time as Defendant. (Exhibit E, p. 105.)

Shalonda's sister Analiscia lived at and was also present in the Boland Place residence at the time of the offense. She testified she was in her room, her mother told her Defendant was there, and she heard a commotion in the front room. (Exhibit E, pp. 191-192.) She saw Defendant with his hand around Shalonda's neck and trying to get her cell phone. (Exhibit E, pp. 193-194.) The others were telling Defendant to stop and trying to get him off Shalonda. (Exhibit E, pp. 192-194.) Hinson also testified Defendant had been to her mother's house on prior occasions and at times when Shalonda was not there, and to her knowledge he was always welcome there. (Exhibit E, pp. 206-207.) Defendant was interviewed by Officer Jeff Brown, who testified that Defendant told him that Shalonda ran to the front door of her mother's house, he and Shalonda arrived at the door of the house at the same time, and a physical altercation ensued between them inside the house. (Exhibit E, pp. 238-239.)

During opening statements, the State explained Defendant was charged with burglary of a dwelling with assault or battery for entering the house on Boland Place without permission with the intent to commit an assault or battery upon Shalonda Stallworth. (Exhibit E, pp. 51-52.) Trial counsel maintained that Defendant did not force his way into the house but was let in by Ms. Stallworth and the Defendant was a frequent visitor to the

house, even without Shalonda, and he went in following Shalonda. (Exhibit E, pp. 56-57.)

During closing argument, the State argued that Defendant barged into the Boland Place home without permission, forcing his way in as Shalonda was trying to shut the door. (Exhibit E, pp. 283, 293.) The State further explained that burglary is entering a structure without permission with the intent to commit a crime within. (Exhibit E, p. 293.) Trial counsel argued Defendant did not enter forcefully, the door was not closed, he had been to the house numerous times, and he did not enter forcefully. (Exhibit E, pp. 309-310.) The State replied in rebuttal that Shalonda tried to shut the door but was prevented by Defendant, who forced his way in. (Exhibit E, p. 323.) The jury was instructed by the trial court that to prove burglary, the State must prove Defendant entered a structure owned by or in the possession of Sharon Stallworth or other family member and that even though an unlawful entering a structure is proved, if there was no intent to commit a crime, Defendant must not be found guilty of burglary. (Exhibit E, pp. 337-338.)

Evidence that Defendant had been a visitor at the home does not necessarily mean he had a standing invitation to enter the home at any time. Even though he had been a welcome visitor to the home, there was no evidence he would be allowed to enter at any time or that he had ever resided there or that he had been invited when he followed Shalonda into the home. *See* Dubois v. State, 247 So. 3d 34, 35-36 (Fla. 1st DCA 2018); Jones v. State, 790 So. 2d 1194, 1198 (Fla. 1st DCA 2001).

Moreover, the issue of whether Defendant's entry was invited or was unlawful was sufficiently presented to the jury and rejected. The information charged that Defendant entered "unlawfully and without a licensed or invited entry." The jury was instructed the entry had to be unlawful, which had the same practical effect as instructing it that the license was not invited, and the jury had the opportunity to find the entry was not unlawful. The instruction given did not preclude Defendant from presenting his defense. Therefore, there was no reasonable probability of a different outcome had the jury been instructed

that it was a defense to burglary if Defendant were invited to enter the home.

Ex. J at 54-56.  On appeal, the First DCA affirmed without a written opinion. Ex. M; Jenkins v. State, 310 So. 3d 24 (Fla. 1st DCA 2021) (table).  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Wright v. Sec'y, Dep't of Corr., 278 F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.").

In particular, the state trial transcript supports the factual findings made by the post-conviction court regarding the testimony of Shalonda Stallworth and Analiscia Hinson, and Officer Brown about the events leading to the charges in this case.  *See* Ex. E at 83, 86-88, 99-100, 101-07, 131-32 (Shalonda Stallworth); 191-94, 206-07 (Analiscia Hinson); 238-39 (Officer

Brown).  The transcript also supports the court's findings regarding counsels' opening statements and closing arguments.  Ex. E at 51-52 (prosecution opening), 56-57 (defense opening); 283, 293 (prosecution closing); 309-10 (defense closing); 323 (prosecution rebuttal).  As the court found, the jury was instructed, in pertinent part:

>Count 2, burglary.
>
>To prove the crime of burglary, the State must prove the following two elements beyond a reasonable doubt:
>
>1. Terrill Jenkins entered a structure owned by or in the possession of Sharon Stallworth or other members of the Stallworth family.
>
>2. At the time of the entering the structure, Terrill Jenkins had the intent to commit an assault or battery upon Shalonda Stallworth in that structure.
>
>The intent with which an act is done is an operation of the mind and, therefore is not always capable of direct proof.  It may be established by circumstantial evidence like any other fact in a case.
>
>**Even though an unlawful entering a structure is proved, if the evidence does not establish that it was done with the intent to commit a crime, to wit:  An assault or battery, the defendant must be found not guilty of burglary**.

Ex. E at 337-38 (bold emphasis added).   As the post-conviction court explained, proof that Jenkins had previously been a visitor to the home does not necessarily mean he had a standing invitation and no evidence showed he was authorized to enter at any time or had ever resided there.  *See* Ex. E

at 102-03, 131-32, 207.  Perhaps most importantly, no evidence indicated Jenkins had been invited to enter when he pushed open the door Shalonda had attempted to close and followed her into the home at the time of the charged offense.  *See id*. at 102 (victim's trial testimony on direct: "I ran to the front of the door.  I tried to close the door, but I couldn't.  He was already, like right there and so he pushed the door open and we was right inside the house."), 131-32 (victim's trial testimony on cross that Jenkins had been to her mother's house before, including some occasions when the victim was not there, and on the day of the incident giving rise to the charges, when the victim fled to her mother's house, Jenkins pushed the door open as she tried to close it:  "The door didn't physically close all the way.  All I know is when I ran, I tried to – I just closed it, was trying to push – I was pushing the door for it to close but he caught it and he came right in and he, you know . . . pushed it open" and tried to strangle her); 207 (Hinson's testimony on cross that Jenkins had been to the house before, even when the victim was not present, "[t]hat's my brother, like, so . . ." he was welcome at the house, but "there were times that they – that she'll say get out" and "she was like, I don't what you here . . . they had a really messed up, you know, whatever you want to call it, relationship, or whatever").  As the court found, the jury considered the issue of whether Jenkins' entry was invited or unlawful and

necessarily found it unlawful – not a licensed or invited entry – in finding him guilty of the charged offense.

The trial court's instructions track the Florida Standard Jury Instructions for burglary and proof of intent. *See* Ex. E at 337-39; Fla. Std. Jury Instr. (Crim.) 13.1. As Respondent indicates, the affirmative defense instruction regarding invitation or license to enter should be given only if a defendant meets his burden to present evidence for that instruction. *See* Fla. Std. Jury Instr. (Crim.) 13.1; ECF No. 15 at 26-30. As the post-conviction court found, no evidence showed Jenkins had a standing invitation or had been invited to enter at the time of the offense.

Moreover, as the state post-conviction court found, defense counsel did make an argument during closing that Jenkins did not enter without permission, despite the lack of evidence:

> Now, the State would have you believe this was a burglary. However, she even said the door didn't close all the way and he came in. She was starting to close the door and he came in. This was not his first time in that house. He had been to that house, according to both Shalonda and Analiscia Hinson, numerous times. He had been there meeting with Sharon Stallworth and visiting with her when Shalonda wasn't even there. So he didn't go in that house – he didn't enter forcefully. He went into a home that he went into all the time. This is not a burglary. He did not have an intent to commit a crime.

Ex. E at 309-10; *see id*. at 57 (defense counsel's opening: "There was no burglary here. He went into a home that he was a frequent visitor of."). Given

this, as well as the intent instruction to the jury that the entry had to be unlawful, it was not unreasonable for the state post-conviction court to conclude defense counsel's performance was not deficient. *See, e.g.*, Robinson v. Jones, No. 4:14cv221-RH/CAS, ECF No. 23, 2016 WL 8313924, at *7-8 (Nov. 22, 2016) (recommendation to deny IAC claim for not objecting to burglary instruction that did not include "element 3" regarding licensed or invited entry defense, explaining in part: "The post-conviction court's denial of relief on this claim was based in part on its reasoning that the modification of the standard instruction by use of the word 'unlawfully' had the same 'practical effect' as giving element 3 of the instruction. Petitioner provides no authority holding that the 'unlawfully entered' language used by the trial court in instructing the jury did not sufficiently account for the 'licensed or invited' language in element 3 of the standard instruction, as the post-conviction court concluded. This conclusion supports the post-conviction court's ruling, which was affirmed on appeal, that trial counsel was not deficient for failing to object, an adjudication that is founded on a determination of state law, review of which is not cognizable in a federal habeas proceeding."), *adopted by district judge*, ECF No. 27 (Feb. 22, 2017).

Petitioner Jenkins has not shown that the state courts' rejection of this ground involved an unreasonable application of clearly established federal

law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

<u>**Ground 2**</u>**:  IAC – Failure to Object to Jury Instruction**
**&**
<u>**Ground 6**</u>**:  IAC – Failure to File Rule 3.140(n) Motion**

In his second ground, Petitioner Jenkins asserts defense counsel provided ineffective assistance by not objecting to the jury "being instructed on the permissive lesser-included offense of aggravated assault" and by not asking for a Rule 3.140(n) motion.  ECF No. 1 at 11.  Jenkins raised a similar IAC claim regarding the jury instruction as the second ground in his Rule 3.850 motion.  Ex. J at 39-40.

In particular, in his Rule 3.850 motion, Jenkins asserted defense counsel provided ineffective assistance in not objecting to the permissive jury instruction because the information did not contain "the well-founded fear element."  Ex. J at 40.  In his motion, Jenkins counsel indicated in a footnote that, although the State filed an amended information on March 7, 2016, which included the well-founded fear element in the charge of attempted first-degree murder, "Jenkins was never arraigned on the March 7, 2016 information," and "[p]rior to proceeding to trial, defense counsel should have objected to the failure to arraign and advised Jenkins of the implication of the amendment."  *Id*. at 39, n. 3.

In his § 2254 petition, as part of Ground 2 and as Ground 6, Jenkins asserts for the first time that, when the State filed the amended information, defense counsel should have moved for a statement of particulars under Rule 3.140(n).  ECF No. 1 at 11, 20.  In his sixth ground, Petitioner Jenkins asserts he requested defense counsel to file a motion under Rule 3.140(n) requesting a statement of particulars, but his counsel rejected his request indicating he was "asking her to do thing(s) that is not her job."  ECF No. 1 at 20.  Jenkins indicates he did not raise this claim is state court and offers "ineffective assistance of trial counsel" as the explanation.  *Id*.

Thus, as a technical matter, the state post-conviction trial court did not rule on this particular claim, at least as it concerns the Rule 3.140(n) motion, Jenkins has not exhausted it, and it is procedurally defaulted.  *See* O'Sullivan, 526 U.S. at 845.  *See, e.g.*, Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (explaining cause and prejudice, and correction of fundamental miscarriage of justice); Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of just exception is applicable.").

Regarding the exhausted portion of the claim, involving the jury instruction on the permissive lesser included offense of aggravated assault, the state post-conviction court summarily denied that claim, making the following findings:

> Defendant claims trial counsel was ineffective for failing to object to the jury being instructed on the permissive lesser included offense of aggravated assault. He alleges the original information did not include an essential element regarding a well-founded fear. In a footnote, Defendant notes the State filed an amended information on March 7, 2016, that contained the well-founded fear element but claims trial counsel should have objected to the failure to arraign Defendant on the amended information and advise Defendant of the implication of the amendment.

> The State filed an amended information on March 7, 2016, which alleged Defendant's act created a well-founded fear in the victim. A jury was selected on March 14, 2016, and the case was set for trial on March 16, 2016. (Exhibit F.) However, the initial trial resulted in a mistrial at Defendant's request on grounds unrelated [to] the claims raised by Defendant. (Exhibit G.) Trial was thereafter held on May 2 and 4, 2016. Defendant's claim as to failure to object to the jury instruction on well founded fear is without merit, as the amended information of March 7, 2016, includes the element. Otherwise, Defendant fails to show he was prejudiced by counsel's failure to object to the lack of arraignment. For example, he fails to allege he or counsel were unaware of or unprepared for the amended charge or how he would have changed his defense. Hall v. State, 187 So. 392, 402 (Fla. 1939); Johnson v. State, 190 So. 2d 811, 812 (Fla. 4th DCA 1966).

Ex. J at 56-57. On appeal, the First DCA affirmed without a written opinion.

Ex. M; Jenkins v. State, 310 So. 3d 24 (Fla. 1st DCA 2021) (table). This

adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d 1245, 1254-55 (11th Cir. 2002). A review of the record supports the state courts' determination. *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, the state record supports the factual findings made by the post-conviction court regarding the filing of the amended information that included the well-founded fear element on March 7, 2016, jury selection on March 14, 2016, and initial trial set for March 16, 2016, which resulted in a mistrial at Jenkins' request. Ex. D at 294-95; Ex. J at 111-13. As the court explained, the jury instruction on well-founded fear was not inappropriate as the amended information included that element. Moreover, during the charge conference, defense counsel agreed with all the lesser included offenses. Ex. E at 271. *See generally, e.g*., Saintil v. Tucker, No. 8:11cv2534-T-30MAP, 2012 WL 2512008, at *5 (June 29, 2012) (order by district judge denying § 2254 petition, including claim of IAC for requesting instruction on lesser included offense in armed robbery charge: "[T]rial counsel's strategy of requesting jury instructions for a lesser-included offense and 'leaving the door open' to a lesser charge was reasonable in light of the evidence. Without such an instruction, the jury could have found

Saintil to be guilty of the higher, charged offense of robber if the lesser grand theft one had not been included."); Everett v. Sec'y, Dep't of Corr., No. 8:08cv1164-T-27MAP, 2011 WL 3664495, at *4 (Aug. 19, 2011) (order by district judge denying § 2254 petition, including claim of IAC for conceding guilt of petit theft, on robbery charge, during opening and closing:   "This strategy was objectively reasonable under the circumstances. . . . The Supreme Court has never held that counsel must have a defendant's consent before arguing a lesser included offense to avoid conviction on a more serious charged offense.").

In addition, as the post-conviction court explained, Jenkins has not shown how he was prejudiced by the lack of objection to the jury instruction, by the lack of arraignment on the amended information, or by the failure to file a motion for a statement of particulars.   Nothing indicates defense counsel was not prepared or did not understand the charges as set forth in the amended information.   Indeed, the jury found Jenkins guilty of lesser included offenses on both Count 1 and Count 3.   Ex. A at 64-66.   As Respondent indicates, on Count 1, the jury found him guilty of aggravated assault with a firearm, three lesser-included offenses from the charged offense of attempted first degree murder.   *Id*. at 64-65; ECF No. 15 at 34. Because the jury also specifically found Jenkins actually possessed and

discharged a firearm during the commission of the offense, no reasonable probability exists the jury would have found him guilty of either of the last two lesser-included offenses, improper exhibition of a dangerous weapon or simple assault.  *See* Ex. A at 65.

Notably, the record also includes a pro se "Motion for Statement of Particulars," filed by Jenkins pursuant to Rule 3.140(n) on or about March 17, 2016, in which he alleged the information failed to inform him "of the particulars of the offenses sufficiently to enable [him] to prepare his defense." Ex. A at 57-58.  By order on March 24, 2016, the trial court struck the motion because Jenkins was represented by counsel.  *Id*. at 62.

Based on the foregoing, Petitioner Jenkins has not shown that the state courts' rejection of the claims in these grounds involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, these claims should be denied.

### Ground 3:  IAC – Failure to Call Witness to Testify

In his third ground, Petitioner Jenkins asserts trial counsel provided ineffective assistance "by failing to get Sharon Stallworth to testify or seek remedial actions if she failed to comply with the subpoena."  ECF No. 1 at 13.  As Respondent indicates, Jenkins raised this claim as the third ground

of his Rule 3.850 motion, to which he had attached a notarized affidavit from

Sharon Stallworth.   Ex. J at 40-43, 50-51; ECF No. 15 at 35.   Stallworth's

affidavit, dated August 19, 2016, stated:

> Terelle called and said he'll be right over.  I said ok the door'll be open.  I went and got back in the bed.  Later I woke up in the hospital + the doctors said I had a panic attack and to make sure I take my meds.
>
> The state attorney sent me a subpoena after they said they wasn't going to use me.  So I called and I asked what time + date I had to be there.  Melissa said we don't have to down to testify.  You wasn't suppose to be given a subpoena.  So I asked are you saying I don't have to come in?  She replied, we don't have you down.  I said, "ok, I'm go to work.  I said wait a minute, Here's Nicki, while on speaker phone, she said you have to be here 8 Wednesday.  We hung up the phone.

Ex. J at 50.

The state post-conviction court summarily denied the claim, making

the following findings:

> Defendant claims trial counsel was ineffective for failing to call Sharon Stallworth to testify or to seek remedial measures to procure her attendance at trial, such as requesting a continuance, a material witness warrant, or a show cause order.  Defendant attaches an affidavit of Sharon Stallworth and alleges she would have testified Defendant called and said he would be right over, and she told Defendant the door would be open.  She also states in the affidavit that she had been sent a subpoena, but Melissa from the State Attorney's office told her she was not scheduled to testify.
>
> At sentencing, trial counsel informed the trial court that she subpoenaed Sharon Stallworth and that Sharon was served but did not show up.  (Exhibit H, p. 8.)  Defendant contended the

State had told Sharon not to show up.  (Exhibit H, pp. 7-8.)  The prosecutor replied that Sharon had appeared for a deposition but was an incompetent witness, in that she was not able to answer questions, and she cried and indicated she could not remember. (Exhibit H, p. 9.)  The prosecutor denied he had ever told her she should not come.  (Exhibit H, p. 9.)  Defendant asked if Sharon had said she never wanted him or he was never invited to her house, and [the] trial court noted that the fact that Defendant had been to the house before was not a permanent license to enter. (Exhibit H, p. 10.)

Sharon Stallworth's behavior at the deposition and by not showing for trial showed her to be in effect unavailable for trial. *See* Nelson v. State, 875 So. 2d 579, 583 (Fla. 2004). Otherwise, the record shows trial counsel did not fail to call Sharon as a witness, and based on the information available to counsel at the time of trial, which showed Sharon to be an incompetent witness with nothing to aid the defense, counsel was not ineffective for failing to take further steps to have Sharon appear for trial.

Ex. J at 57-58.  On appeal, the First DCA affirmed without a written opinion.

Ex. M; Jenkins v. State, 310 So. 3d 24 (Fla. 1st DCA 2021) (table).  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99; Wright, 278 F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, the state court sentencing transcript supports the findings made by the post-conviction court regarding discussion about the subpoena for Sharon Stallworth.  During the sentencing hearing, Jenkins stated:

Your Honor, I understand what's going on here, know what I'm saying?  Like, I've been found guilty of a lesser-included offense, which is aggravated assault with a firearm with discharge of a firearm.  The only thing I'm asking for, and which I should have been granted, know what I'm saying, was a fair trial, Your Honor.

Up in trial, not one of my witnessed was put on the stand, Your Honor.  Then after talking to my witnesses I find out that the State calls my witnesses and told my witnesses not to show up, which he probably had them up on his witness list also, which was Sharon Stallworth.

So Your Honor, like, yeah, I got convicted of this, know what I'm saying? But I really feel, like, to sentence me you should hear what they've got to say, not what the State got to say, because the State's just looking at paper, know what I'm saying, when you can look – when you can hear the words come out the flesh of a human being, how do they feel about my sentencing.

Ex. A at 74.  Defense counsel then stated, "I will tell the Judge – Court that I did subpoena Sharon Stallworth to be here and she did not show up.  She didn't – and she was served."  *Id*.  The judge asked what her testimony would have addressed and defense counsel answered, "It would have gone to the burglary."  *Id*.  The following transpired on the record:

MR. GORDON [prosecutor]:  Your Honor, just for the record, from the State's perspective regarding Ms. Stallworth, Ms. Amond [defense counsel] subpoenaed Ms. Stallworth for a deposition.  Ms. Stallworth came in for the deposition.  We had a lengthy interaction with her.

She was – she showed herself to be an incompetent witness.  She wasn't able to answer questions put to her.  When asked about her memories of the event, she indicated that she couldn't remember and then she sat there and, just, wondered to

herself why she couldn't remember. And then she started crying and got upset and it required her family to remove her from Ms. Amond's office.

MS. AMOND: That is true.

MR. GORDON: So based on that, I did not subpoena her for the trial. But I did never – I never called her and told her she should not come.

THE DEFENDANT: Your Honor, that might be true, but –

THE COURT: Well, I'm – believe me; I know you didn't tell your witness not to show up.

THE DEFENDANT: Your Honor, that might – well, Your Honor – I'm saying you don't got to believe me. You can call the witness and ask the witness yourself. But that might be true, but the witness was for me for the burglary.

So Shalonda Stallworth shouldn't have been able to tell who can some to her mother's house if that's not her dwelling. So I should've been able to face her for her to tell me that I couldn't come to her house, which I really feel like that's my constitutional right to face my accuser.

So, like – Your Honor, like, what he's saying about her coming, breaking down and everything about that, I understand that. But the thing is, did she say that she never wanted me or I was never invited to her house?

THE COURT: Well, I have no doubt you've been to the house before, but that's not a permanent license to go.

*Id*. at 74-76.

Thus, the record supports the post-conviction court's findings regarding Sharon Stallworth's behavior at the deposition, that defense

counsel did not fail to call her as a witness, and that, by not showing for the trial, Sharon Stallworth proved "to be in effect unavailable for trial."  Indeed, the attached affidavit, quoted above, appears to indicate Stallworth was told "to be here 8 Wednesday" and she evidently did not show.  Ex. J at 50.  The trial began on Wednesday, May 4, 2016, at 8:30 a.m.  *See* Ex. E at 5, 36.  Moreover, the affidavit does not make clear exactly what Stallworth's testimony would have been; indeed, it does not even specify the date or time of the events including when "Terelle called."  Ex. J at 50.  Given all this, it was not unreasonable for the post-conviction court to conclude that, with the information available to defense counsel at the time of trial, counsel was not ineffective for failing to take further steps to have Stallworth appear.  *See generally, e.g.,* Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006) (explaining burden is "heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative'" (quoting United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980)); *accord* McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1365 (11th Cir. 2021); *see also, e.g.*, Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) ("Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy

and speculation about what witnesses would have said on the stand is too uncertain.").

Petitioner Jenkins has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

### Ground 4:  IAC – Cumulative Error

In his fourth ground, Petitioner Jenkins asserts, "Trial counsel's cumulative errors deprived the Petitioner [of] the right to have . . . effective assistance of counsel." ECF No. 1 at 15. Jenkins exhausted this ground by raising it as the fourth claim in his amended Rule 3.850 motion. Ex. J at 42.

The state post-conviction trial court denied the claim, explaining "[b]ecause Defendant's individual claims of error fail, this claim of cumulative error fails as well." Ex. J at 58. On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter, 562 U.S. at 99. The record supports the state courts' determination. *See* Wilson, 138 S. Ct. at 1192.

Petitioner Jenkins has not shown that the state courts' adjudication of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the

facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Indeed, the Eleventh Circuit has rejected an argument of cumulative error in the context of IAC claims. Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (explaining that "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim" and "the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt'" (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984))).   Moreover, as the state court explained, because each individual ground fails, this ground likewise fails and should be denied. *See, e.g.*, Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative trial court error as "none of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate"); *accord, e.g.*, United States v. Chalker, 966 F.3d 1177, 1193-94 (11th Cir. 2020).

### <u>Ground 5</u>:  IAC – Consequences of Not Testifying

In his fifth ground, Petitioner Jenkins asserts his "[t]rial counsel failed to [advise] her client about the consequence(s) of not testifying."  ECF No. 1 at 18.  In particular, Jenkins asserts that his attorney advised him "not to

testify but never explained how that would leave the State's case unrefuted and several part(s) of the evidence and testimony unexplain[ed]." *Id*. He states that, if not for counsel's "misadvice," he would have testified that "[h]e had permission to enter the house and even had a room at that house." *Id*.

Jenkins indicates he did not raise this claim in his direct appeal or his Rule 3.850 motion. *Id*. He does not indicate why he did not raise it, only that "the lawyer would not listen to his client," *id*. at 18, and "to now, the petitioner has had a paid lawyer" and "now [has] a chance to voice his opinion," *id*. at 19. In his reply, he asserts his post-conviction counsel was ineffective and cites Martinez v. Ryan, 566 U.S. 1 (2012). ECF No. 16 at 13.

Jenkins did not exhaust this ground in state court, and it is procedurally defaulted. *See* O'Sullivan, 526 U.S. at 845. *See, e.g.*, Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (explaining cause and prejudice, and correction of fundamental miscarriage of justice); Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of just exception is applicable."). In Martinez, the U.S. Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish

cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  566 U.S. at 9.

In particular, "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances":  (1) "[t]he first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial"; and (2) "[t]he second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland." *Id*. at 14.  The Court explained that, "[t]o overcome the default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  *Id*. at 14.  The Court further explained that "[w]hen faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards."  *Id*. at 15-16.

Here, Respondent asserts the underlying IAC claim is not substantial.

ECF No. 15 at 45.  Indeed, the trial transcript reflects the judge asked Jenkins

about his decision not to testify:

> THE COURT:  Okay.  Has Mr. Jenkins decided if he's going to testify or not?
>
> MS. AMOND [defense counsel]:  My understanding is he is not going to be testifying, Your Honor.
>
> THE COURT:  All right.  Mr. Jenkins, I just want to ask you a few questions about your decision whether you're going to testify.  Okay?  Could you raise your right hand?
>
>     (Defendant sworn)
>
> THE COURT:  Okay.  I don't want to know anything you talked to your attorney about, but I have a few questions because this is your decision.  Do you understand you have the constitutional right not to testify and the jury will be instructed this cannot be held against you?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  You may also testify, but you'll be treated like any other witness.  Do you understand that?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  And have you had enough time to discuss this matter with your attorney?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  And are you comfortable with her advice?
>
> THE DEFENDANT:  Yes, sir.

> THE COURT:  Do you need any more time with her to discuss whether you're going to testify?
>
> THE DEFENDANT:  I'm not going to testify.
>
> THE COURT:  Okay.  I'll find your decision is freely, knowingly, and voluntarily made.

Ex. E at 262-63.  Jenkins thus indicated in court that he had discussed this with his attorney, he had enough time to discuss it with his attorney, he was comfortable with her advice, he understood he could testify, and he decided not to testify.  "Solemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Petitioner Jenkins asserts counsel never explained to him that, if he did not testify, it "would leave the State's case unrefuted."  ECF No. 1 at 18. He asserts that if he had testified, he would have said "[h]e had permission to enter the house and even had a room at that house."  Id.  These assertions appear inconsistent with his statements in court, quoted above, that he had discussed the issue with his attorney, had enough time to discuss the issue, and was comfortable with his attorney's advice.  The trial court thoroughly questioned Jenkins, as set forth above, and Jenkins unequivocally waived his right to testify.

Moreover, the court's colloquy does not reflect whether defense counsel advised Jenkins to testify or not to testify.  Nothing indicates counsel

stopped him from testifying; to the contrary, Jenkins indicated to the court that it was his decision not to testify.  *See, e.g.*, McGriff v. Dep't of Corr., 338 F.3d 1231, 1237 (11th Cir. 2003) (delineating "the duties of a trial counsel with respect to a defendant's right to testify" as "[c]ounsel must advise the defendant (1) of his right to testify or not to testify; (2) of the strategic implications of each choice; and (3) that it is ultimately for the defendant himself to decide whether to testify").

In addition, as Respondent indicates, the record reflects that if Jenkins had decided to testify, he would have been subject to questioning, at least impeachment, about his prior criminal record that included four felonies.  If Jenkins had not answered truthfully, then the prosecution could have introduced that the felonies included felony battery, battery on a law enforcement officer, and resisting an officer with violence, reflecting a violent nature and discrediting his defense to the attempted murder and aggravated assault charges.  *See* Ex. A at 82.  *See generally* Atkins v. Singletary, 965 F.2d 952, 961 n.7 (11th Cir. 1992) (explaining defendant who testifies risks that jury will both disbelieve his testimony and conclude the opposite of his testimony is true).  Given all this, Jenkins has not shown the underlying IAC claim is a substantial one.

Based on the foregoing, Jenkins did not exhaust this ground in state court and it is procedurally defaulted. Jenkins cannot rely on <u>Martinez</u> to excuse his procedural default because his underlying IAC claim is not substantial and his post-conviction counsel did not perform deficiently by not raising it in the Rule 3.850 proceedings. *See, e.g.*, <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1263 (11th Cir. 2014) ("[T]o show that his habeas counsel failed to provide the level of representation required by <u>Strickland</u>, Hittson must show more than the mere fact that they failed to raise potentially meritorious claims; he must show that *no competent counsel*, in the exercise of reasonable professional judgment, would have omitted those claims."). This ground should be denied.

## Conclusion

Petitioner Jenkins is not entitled to federal habeas relief. It is respectfully **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue

or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 30, 2022.

S/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.